Keith Slenkovich (CA Bar No. 129793)
keith.slenkovich@wilmerhale.com
Song Zhu (CA Bar No. 257608)
song.zhu@wilmerhale.com
WILMER CUTLER PICKERING HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA 94304
Tel. (650) 858-6000
Fax (650) 858-6100

Vinita Ferrera (*pro hac vice* motion to be filed)
vinita.ferrera@wilmerhale.com
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel. (617) 526-6000
Fax (617) 526-5000

*Attorneys for Plaintiffs Cheetah Mobile Inc.,*
*Cheetah Mobile America, Inc., and*
*Cheetah Technology Corporation Limited*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHEETAH MOBILE INC.,<br><br>CHEETAH MOBILE AMERICA, INC.,<br><br>CHEETAH TECHNOLOGY CORPORATION LIMITED,<br><br>                   Plaintiffs,<br><br>    vs.<br><br>APUS GROUP,<br><br>               Defendant. | Case No.  CA 15-2363<br><br>**COMPLAINT FOR DEFAMATION, TRADE LIBEL, COPYRIGHT INFRINGEMENT, FEDERAL AND STATE FALSE ADVERTISING, TRADEMARK DILUTION, UNFAIR COMPETITION, INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE, AND INTENTIONAL INTERFERENCE WITH CONTRACT**<br><br>DEMAND FOR JURY TRIAL |

For its Complaint against defendant APUS Group ("APUS"), plaintiffs Cheetah Mobile Inc., Cheetah Mobile America, Inc. and Cheetah Technology Corporation Limited (collectively, "Cheetah Mobile") allege as follows:

## NATURE OF THE ACTION

1. Cheetah Mobile is the developer and owner of the "Clean Master®" smartphone utility application ("app"), a smartphone optimization software app that improves a smartphone's performance by cleaning files, optimizing device memory, and providing protection against viruses, trojans, and malware that would otherwise interfere with the performance of the smartphone. Since 2012, Cheetah Mobile has devoted substantial resources to research and development, marketing, and promotion of the Clean Master® app. As a result, the app has enjoyed enormous success and popularity in the United States and globally, with over 854.8 million downloads as of March 2015. It has become one of the most frequently downloaded apps in Google Play's "Tools" category. The Clean Master® app has been praised by consumers and commentators alike for its efficacy, sleek design, and ease of use.

2. In addition to the name Clean Master®, which Cheetah Mobile has been using in connection with the app since 2012, Cheetah Mobile makes prominent use of a brush logo design (a hand brush with a capital "M", shown below) as the icon for the app and in marketing and promotional information for the app.



3. By virtue of marketing and distribution in the United States and worldwide via numerous websites, including Cheetah Mobile's own interactive website and Google's "Google Play" app store, the Clean Master® mark and its associated brush logo design ("the Clean Master Brush mark") have come to be associated by millions of app users with the family of unique and distinctive trademarks owned by, and representing products of, Cheetah Mobile.

4.     Cheetah Mobile's Clean Master® mark and Clean Master® Brush mark are protected by United States federal trademark registrations and state trademark laws.  Cheetah Mobile's Clean Master® brush logo design is further protected by U.S. copyright registration.

5.     APUS is a competing Chinese smartphone app developer founded in June 2014.  APUS also offers its apps for users to download via the Google Play app store.  The popularity of APUS' apps has lagged far behind that of Cheetah Mobile's apps, and for this reason APUS has begun a smear campaign of intentionally disparaging Cheetah Mobile and its software apps in an effort to capture some of Cheetah Mobile's market share.

6.     For instance, beginning in or before May 2015, APUS, began intentionally and knowingly publishing and disseminating false and defamatory information about Cheetah Mobile and its Clean Master® app through one of APUS' apps, the APUS Launcher.  The APUS Launcher offers certain built-in features such as the APUS Newsfeed, which APUS markets as helping users browse and search for online news, and the APUS App Market, which APUS markets as helping users browse and find other apps on Google Play more quickly.  However, on information and belief APUS programmed the APUS Launcher so that users who have download the app receive banners stating "WATCH OUT! Clean Master is stealing your data!" along with a mutilated Clean Master® Brush mark and a masked bandit figure.  APUS has caused these images to appear automatically, persistently, and prominently on APUS Launcher users' home screens as well as the APUS Newsfeed and APUS App Market front pages.

7.     Cheetah Mobile is further informed and believes that APUS has intentionally and knowingly fabricated and disguised blogger comments about Cheetah Mobile and Clean Master® as "Breaking News" whenever mobile users load their APUS Newsfeed feature.  APUS has also used, displayed, distributed, and mutilated Cheetah Mobile's protected copyright and trademarks as icons within the APUS Launcher without authorization.  APUS' conduct is intended to harm Cheetah Mobile by misleading consumers into believing that Clean Master® is unsafe and that Cheetah Mobile extracts user data unlawfully, i.e., "steal(s)…data".

8.     As a result of APUS' misconduct, consumers are deceived into removing, or deciding not to install, the Clean Master® app as well as other apps that Cheetah Mobile offers.

9.     APUS' conduct has caused substantial irreparable harm to Cheetah Mobile's business, reputation, and consumer goodwill in California and elsewhere in the United States.  It has and continues to harm and interfere with Cheetah Mobile's ability to retain and attract users and business partners, as well as its ability to monetize their platforms of products and services. APUS' conduct constitutes at least defamation, trade libel, product disparagement, false advertising, unfair competition, intentional interference with prospective economic advantage, and intentional interference with contract.  APUS has also violated Cheetah Mobile's copyright and trademark rights protected by federal and state laws.

10.     Cheetah Mobile seeks injunctive relief barring APUS from continuing to engage in such unlawful acts, monetary damages for the harm to Cheetah Mobile's business, reputation, consumer goodwill, and intellectual property, as well as an accounting and disgorgement of the profits that APUS secured for itself through its wrongful conduct, punitive damages, and the attorneys' fees and costs incurred by Cheetah Mobile in enforcing these laws against APUS' willful misconduct.

## THE PARTIES

11.     Plaintiff Cheetah Mobile Inc. is an exempted limited liability company organized under the laws of the Cayman Islands with its principal place of business at 12/F, Fosun International Center Tower, No. 237 Chaoyang North Road, Chaoyang District, Beijing 100022, China.

12.     Plaintiff Cheetah Mobile America, Inc. is a wholly owned U.S. subsidiary of Cheetah Mobile Inc. incorporated in Delaware with its principal place of business at 1350 Bayshore Highway, Suite 205, Burlingame, California 94010.

13.     Plaintiff Cheetah Technology Corporation Limited is a wholly owned Hong Kong subsidiary of Cheetah Mobile Inc. with a registered address at Unit 1309A, 13/F, Cable TV Tower, No. 9 Hoi Shing Road, Tsuen Wan, N.T., Hong Kong.

14.    On information and belief, Defendant APUS (Chinese name 北京麒麟合盛科技有限公司) is a Chinese company with its principal place of business at No. 10 Wangjing Street, Wangjing SOHO, Tower 3, 42nd Floor, Area B, Chaoyang District, Beijing 100015, China.  On information and belief, APUS was, and continues to be, the developer and owner of the APUS Launcher app, and has and continues to advertise, promote, and distribute the infringing, false, and defamatory content about Cheetah Mobile and its products in this District and the United States as described herein.

## JURISDICTION

15.    This action includes claims for federal trademark and copyright infringement under Titles 15 and 17 of the United States Code.  As such, this Court has subject matter jurisdiction over these claims under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1338(a) (copyright and trademark claims), and 15 U.S.C. § 1121(a) (Lanham Act claims).  The California state unfair competition and common law claims join the substantial and related federal claims and form part of the same case or controversy.  This Court therefore also has jurisdiction over such claims under 28 U.S.C. § 1338(b) (unfair competition claims joined with copyright and trademark claims) and 28 U.S.C. § 1367 (supplemental jurisdiction).

16.    This Court has personal jurisdiction over APUS under Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure and California Code of Civil Procedure § 410.10 because APUS has committed and continues to commit willful and unlawful acts that form the basis for, and are the but for cause of Cheetah Mobile's injuries giving rise to, this action in this District.  On information and belief, APUS' acts are expressly aimed at this District, in part because APUS distributes the false and defamatory information about Cheetah Mobile and its products through the APUS Launcher with the specific knowledge, understanding, and desire to target users in this District.  Additionally, on information and belief, APUS knew about Cheetah Mobile's prior distribution of Clean Master®, and its goodwill established in California therefrom, before APUS began distributing its own app.  On information and belief, APUS also knows that its conduct is likely to cause harm in this District, where Cheetah Mobile America,

Inc., who is involved in the promotion and distribution of Clean Master® in the United States, is based, and where damage to Cheetah Mobile's goodwill is likely to be sustained.

17.     On information and belief, APUS engages and contracts with primary app distributor Google, Inc.—which is headquartered in this District—to distribute APUS' apps to hundreds of thousands of District residents. On information and belief, by entering into a standard developer distribution agreement with Google, APUS has consented to "submit to the exclusive jurisdiction of the courts located within the county of Santa Clara, California to resolve any legal matter arising from" the agreement. *Developer Distribution Agreement*, Google Play, https://play.google.com/about/developer-distribution-agreement.html (last visited May 22, 2015). Thus, APUS already has consented to jurisdiction in this District with respect to the distribution of its apps.

18.     On further information and belief, APUS has intentionally targeted potential customers and sales within this District by, among other acts, causing a press release to be issued in San Francisco through PRNewswire on or about April 23, 2015 entitled "APUS Group Updates APUS Launcher, Adding Free Swipe and APUS Newsfeed Features." *See*, http://www.prnewswire.com/news-releases/apus-group-updates-apus-launcher-adding-free-swipe-and-apus-newsfeed-features-300071007.html (last visited May 23, 2015). The APUS Launcher is one of the vehicles through which APUS has distributed the false and defamatory statements described herein.

19.     In addition, on information and belief, APUS' founder and CEO, Mr. Tao Li, personally attended APUS' promotional events in Silicon Valley, Stanford University, and the University of California, Berkeley in February and May of 2015 in order to attract users, investors, and media attention in this District. On information and belief, one of APUS' main investors is a venture capital company called Redpoint Ventures, located in Menlo Park, California, further evidencing APUS' purposeful availment of the privileges of doing business in this District.

20.     Upon information and belief, APUS' North America Regional Managing Director, Mr. Rock Zhang, works and lives in this District.  *See* LinkedIn, https://www.linkedin.com/in/rockzhangus (last visited May 23, 2015).

21.     Alternatively, to the extent that APUS contends it lacks sufficient contacts with this District to support the exercise of personal jurisdiction over it here, this Court has personal jurisdiction over APUS under Rule 4(k)(2) of the Federal Rules of Civil Procedure because a summons has or will be served on APUS in this action involving copyright and trademark claims that arise under federal law, and APUS is a foreign defendant who would not otherwise be subject to jurisdiction in any state's courts of general jurisdiction.  Exercising jurisdiction over APUS is consistent with principles of due process in light of APUS' continuous and purposeful commercial activity directed at the United States as a whole, and APUS' knowledge that such activity is likely to cause harm here.  Specifically, on information and belief, APUS:

   a.     avails itself of the U.S. app market, which comprises an integral component of APUS' business model and profitability, by knowingly and intentionally placing its APUS Launcher app and other products in the U.S. stream of commerce;

   b.     targets the U.S. smartphone app market by releasing English versions of the infringing APUS Launcher app in the United States through several U.S.-based websites, including Google Play;

   c.     uploads promotional videos about its app products on YouTube.com, in English, targeting app users in the United States;

   d.     engages in the knowing and repeated transmission of software over the Internet via its own interactive website as well as the highly interactive Google Play website, with servers located in the U.S. that are controlled by Google, who is located in this District;

   e.     offers the APUS Launcher and other products through the Google Play app store, resulting in between four and five million downloads in the U.S. since June 2014;

f. enters into end-user contracts governed by U.S. law, with millions of U.S. residents who download and install the APUS Launcher app; and

g. began distributing false and defamatory information in the United States about its main competitor Cheetah Mobile's brand name and products, knowing that Cheetah Mobile has established goodwill with U.S. consumers and by virtue of its U.S. intellectual property assets, and that Cheetah Mobile is therefore likely to suffer harm in the United States.

22. Exercising jurisdiction over APUS would not be unreasonable or unfair because APUS has purposefully interjected itself and its products into this District and the United States as a whole, and the burden on APUS in defending a suit here is minimal given APUS' frequent activities in this District. Additionally, Cheetah Mobile's injuries cannot be adequately redressed in a foreign forum (for example, in China) because remedies for defamation, infringement of U.S. intellectual property, and unfair competition claims, based on acts and injuries that occurred, and are continuing to occur, within the United States, would be limited in such a forum.

23. Finally, this District has a legitimate interest in adjudicating the intellectual property and other claims herein, for which the District has developed an expertise, because Cheetah Mobile has sustained injuries to its consumer goodwill here. Cheetah Mobile maintains a substantial presence in this District through Cheetah Mobile America, Inc. (located in Burlingame, California), which is involved in the promotion and distribution of the Clean Master® app.

**VENUE**

24. Venue is proper in this District under 28 U.S.C. §§ 1391(b)(1), (b)(3), and (c)(2), because APUS is subject to personal jurisdiction in this District with respect to this action, as described above, and therefore resides here for purposes of venue. Additionally, venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial portion of the events or omissions giving rise to Cheetah Mobile's defamation, copyright infringement, trademark dilution, false advertising, and unfair competition claims occurred in this District, where third-party Google—which

distributes APUS' infringing app—is headquartered. Finally, this action arises under federal copyright law, and therefore venue is proper under 28 U.S.C. § 1400(a) in this District.

25. In the alternative, to the extent APUS contends that it is not subject to personal jurisdiction in this District or any other judicial district in the United States, venue is nevertheless proper under 28 U.S.C. §§ 1391(c)(3) and (d) because APUS is a Chinese company.

**INTRADISTRICT ASSIGNMENT**

26. This action qualifies as an "Intellectual Property Action," and should therefore be assigned on a district-wide basis under Civil L.R. 3-2(c).

**FACTUAL ALLEGATIONS**

**A.** **Cheetah Mobile's Business and Products**

27. Founded in 2009, Cheetah Mobile Inc. is a leading mobile Internet company and smartphone software developer with nearly 443 million monthly active users as of March 2015. Following its success as one of the largest Internet security providers in China, Cheetah Mobile launched a successful IPO in the United States in 2014 (NYSE: CMCM), selling 12 million shares. Cheetah Mobile's innovative technology focuses on making the Internet and mobile experiences for users more expeditious, efficient, intuitive, and secure. One of Cheetah Mobile's best known mobile software applications is its flagship Clean Master® app, which was first released in the United States on September 7, 2012. Clean Master® is a highly successful smartphone optimization app that improves a device's performance by cleaning files, optimizing device memory, and providing protection against viruses, trojans, and malware.

28. Cheetah Mobile distributes its Clean Master® app for free via various websites, including its own interactive website and the Google Play app store, which allows millions of users worldwide to search for and download Cheetah Mobile's software. It has approximately 290 million mobile monthly active users worldwide as of April 2015. Clean Master® is currently the No. 1 app on Google Play for boosting smartphone performance. *Id*. In January

2015, Cheetah Mobile was ranked as the No. 3 non-game publisher worldwide for Android and iOS apps, behind only Facebook and Google. *Id.*

29. Clean Master® is offered worldwide in thirty-three languages. The English version of Clean Master® is particularly popular among U.S. residents, having been downloaded more than 50 million times since December 2013 and with over 14 million active users daily. Clean Master® is consistently ranked the No. 1 most popular mobile app in the United States in Google Play's "Tools" category. *See id.; Clean Master Daily Ranks*, App Annie, http://www.appannie.com/ (last visited May 22, 2015). In fact, Clean Master® has received a 4.7-star rating among Google Play users, and more than 79% of the 24.9 million users who reviewed the app gave it a rating of 5 stars—the highest rating possible. *See Clean Master*, Google Play, https://play.google.com/store/apps/details?id=com.cleanmaster.mguard (last visited May 22, 2015). Other published reviews of Clean Master® have also been extremely positive. CNET, for example, gave Clean Master® an "outstanding" 4.5-out-of-5-star rating. *Clean Master Free Optimizer*, CNET (Apr. 21, 2014), http://download.cnet.com/Clean-Master-Free-Optimizer/3000-2094_4-75764920.html. The considerable recognition of Clean Master® has reflected significant consumer goodwill for Cheetah Mobile and its app products throughout this District and the United States.

30. Cheetah Mobile has gained millions of active daily users by offering its popular apps for free. Users who download Cheetah Mobile's apps enter into an agreement with Cheetah Mobile that permits the access and use of certain types of user data for purposes of targeted advertising, in return for free use of the Cheetah Mobile apps. Cheetah Mobile, in turn, generates revenues tied to these apps by running mobile advertisements and publishing online games through partnerships with other major internet companies such as Google, Facebook, Alibaba, Tencent, and Baidu.

**B.     Cheetah Mobile's Trademarks and Copyright**

1    31.    Cheetah Mobile's brand and products are protected through a broad range of

2    intellectual property rights.  For example, Cheetah Mobile America, Inc. is the owner of U.S.

3    Federal Trademark Registration No. 4544968 for the mark Clean Master® and U.S. Registration

4    No. 4673142 for the Clean Master® Brush mark.  The Clean Master® brush mark, which is used

5    as the Clean Master® app's icon on smartphones, consists of a hand-held brush bearing an "M"

6    on the bridge of the handle and arranged at an angle, as shown below.  [Although the handle of

7    the brush logo is often shown in blue, the trademark registration does not have any color

8    limitations.]



12    32.    The design of Clean Master® brush logo above is further protected by U.S.

13    Copyright Registration No. VA 1-911-086, owned by Cheetah Mobile Inc.

14    33.    Cheetah Mobile has continuously used the Clean Master® mark and Clean

15    Master® Brush mark since September 2012 in California, and in interstate commerce within the

16    United States generally, in connection with the Clean Master® app, expending significant

17    resources on advertising and marketing activities.  Below is a screenshot from Google Play

18    website showing the two marks appearing in close proximity and advertised conjointly:



34.     Through Cheetah Mobile's advertising and promotion of the Clean Master® mark and Clean Master® Brush mark in connection with Clean Master® in California and the United States generally, consumers have come to associate each mark separately and collectively with Cheetah Mobile and its Clean Master® app.  Thus, these marks form a strong family of marks containing common characteristics recognized by consumers to be indicative of a common source—i.e., Cheetah Mobile.

35.     In addition, Cheetah Mobile has acquired state law protections for the company name Cheetah Mobile and the acronym "CMCM" (for Cheetah Mobile Clean Master®), through use in commerce and its interactive website www.cmcm.com at least since May 2014.

**C.     APUS' Intentional Publication and Dissemination of False and Defamatory Information about  Cheetah Mobile and the Clean Master® App**

36.     One of Cheetah Mobile's competitors for smartphone application software is APUS, a Chinese company founded in June 2014.  Since then, APUS has been developing and distributing competing apps in China as well as in the United States.  APUS claims on its website that it now has over 150 million users worldwide http://www.apusapps.com/about.html (last visited May 22, 2015).

37.     In June 2014, APUS released an app called APUS Launcher through the same U.S.-based distribution channels as Cheetah Mobile's Clean Master® app, including Google Play.  The APUS Launcher app allegedly offers to help users search and find apps or websites, and personalize the home screen of a users' smartphone with various themes and wallpapers. *See* Google Play, https://play.google.com/store/apps/details?id=com.apusapps.launcher&referrer=id%3D100089 (last visited May 22, 2015).

38.     However, starting on or before May 2015, users who had downloaded the APUS Launcher on their smartphones received large banners on their home screens depicting a bandit wearing an eye mask and a warning sign "WATCH OUT! Clean Master is stealing your data!"  The Clean Master® Brush mark is also shown in these banners overlaid by a warning symbol. (*See* also Ex. A for full screenshots of variations of such banners.)



The same banners also appear prominently and persistently whenever a user launches her APUS App Market to search for and download additional apps. (*See also* Ex. B for a full screenshot.)



39.     On information and belief, APUS has sought to "legitimize" its defamatory banners (e.g. "WATCH OUT!  Clean Master is stealing your data!"), by suggesting these defamatory statements are supported by independent sources, with a click-through link option on the banners.  On information and belief, as of May 19, 2015, any user who chose to click on the link was directed to an online blog article published by Gizmodo, http://gizmodo.com/the-android-apps-that-collect-the-most-data-on-you-1676385681.)  However, the article itself only provides a list of apps that collect user data – nowhere does the article state or suggest that any of the listed apps actually "steal" user data.  In fact, the article actually points out that the companies who develop such apps "often need permission to access other stuff on your phone to

work. Most importantly, the article does not allege that the Clean Master® app misuses user data in any way.

40. Apparently realizing that those users who chose to click through to the Gizmodo article might learn that APUS' claims that "Clean Master is stealing your data!" were not supported, APUS switched the destination for the banner link to an even more tenuous source. On information and belief, on the evening of May 19, 2015, APUS removed the link to the Gizmodo article, and substituted a link to a forum comment regarding the Gizmodo article. This purported authority for APUS' "stealing" allegations likewise does not support APUS' slanderous banners.

41. The APUS Launcher further disguises the same Gizmodo article or other online forum discussions as "Breaking News" on the front page of a user's APUS Newsfeed, under deceitful headlines such as "Watch out! Clean Master is stealing your data!". (*See also* Ex. C for two full screenshots).



"
If a user were to click on such alleged headlines, she would be taken to online discussion forums about apps. (*See* Exs. D and E for a series of screenshots).

42. In addition, users who have downloaded the APUS Launcher app may see a dropdown hexagon icon automatically appear on their home screen. These dropdown icons draw user attention by flashing different images, as shown below. Amongst these images are the Clean Master® Brush mark crossed out with a WARNING label (*see also* Ex. F for a full screenshot) and Cheetah Mobile's acronym "CMCM" (*see also* Ex. G).

 

43.     If a user clicks on these dropdown icons, she is taken to a blog posting titled "Cheetah Mobile: Zero Profit This Year, Morgan Stanley Lowers Price Target." *See* http://androidzipper.blogspot.com/?m=0 (last visited May 22, 2015).  This blog includes false and defamatory information accusing Cheetah Mobile of cheating its users and investors. ("Meanwhile, cheetah mobile packaged the advertising revenue into mobile products revenue capacity, defraud the capital market of mobile Internet industry high valuation. Executives and early investors cashed out, and then the risk onto the market investors."  "Analysis suggested us to keep a clear understanding that reselling the inferior traffic to earn advertising spreads is the lowest business model, which is based on cheating users.")

44.     On information and belief, the account from which this blog posting originated has been active only since May 19, 2015, the same date when APUS apparently began disseminating banners accusing Cheetah Mobile of "stealing user data" through its apps.  The only other post on this blog is titled "Clean Master Collects the Most Data on You",  which contains similarly false and defamatory information accusing Clean Master® and other Cheetah Mobile apps of stealing user data. *See* http://ivyonmyway.blogspot.com/ (last visited May 22, 2015).  ("Recently, the famous American Technology Media Gizmodo wrote that the cheetah mobile steal user privacy which is a serious violation of user information security." "They profit by stealing users' privacy information, and recommend relevant ads to users according to the users' habits."  "The article warns users that security apps scan and even steal user privacy harm far beyond the significance of safety protection itself.")

45.     APUS' statements accusing Cheetah Mobile of "stealing" user data through the Clean Master® app are false and misleading.

46.     On information and belief, APUS, through the various actions and statements described above, including force feeding banners and dropdown icons within its APUS Launcher falsely accusing Cheetah Mobile of "stealing" users' data and through the issuance of misleading headlines on its APUS Newsfeed, intentionally and knowingly publishes and disseminates false, misleading, and defamatory information to millions of users about Cheetah Mobile and the Clean Master® app.  On information and belief, APUS has intended to deceive, and has deceived, users into believing that the Clean Master® app is unsafe and that Cheetah Mobile unlawfully extracts user data.  APUS' banners are intended to mislead and have misled users to remove the Clean Master® app and other Cheetah Mobile's apps from their smartphones.  Further, by prominently displaying these banners in APUS' App Market, where a user would search for and download new apps offered on the Google Play app store, APUS intends to mislead and deceive the users into believing that Clean Master® is unsafe and that they should therefore not install the app or other Cheetah Mobile apps.  APUS' conduct is intended to harm Cheetah Mobile's business and reputation, as well as consumer goodwill associated with the Clean Master® app.

47.     In addition, APUS' commercial and  unauthorized use and display of Cheetah Mobile's trademarks, including Clean Master® and the Clean Master® Brush mark, tarnishes and thereby dilutes the value of Cheetah Mobile's trademarks.  On information and belief, by intentionally and knowingly using Cheetah Mobile's trademarks in connection with false and defamatory information about Cheetah Mobile and the Clean Master® app, APUS has misled users into believing that Cheetah Mobile and the Clean Master® app engage in unauthorized collection (i.e., "stealing") of users' data.  APUS' commercial and unauthorized use of these marks within its products, including but not limited to APUS Launcher, has deceived consumers and/or caused confusion or mistake as to the quality and characteristics of Cheetah Mobile's products.  APUS' unauthorized use of Cheetah Mobile's trademarks constitutes trademark dilution, false advertising, and unfair competition.  The mutilation and display of Cheetah Mobile's brush logo within APUS' app without authorization also infringes Cheetah Mobile's copyright.

**D.     Cheetah Mobile's Injury as a Result of APUS' Misconduct**

48.     APUS has harmed, and unless enjoined, will continue to cause damage and irreparable harm to Cheetah Mobile's business, reputation, and consumer goodwill in this District and nationwide by intentionally and knowingly publishing and disseminating false and defamatory information about Cheetah Mobile and the Clean Master® app.  APUS' conduct has further tarnished the value of Cheetah Mobile's valuable trademarks, and interfered with Cheetah Mobile's prospective economic relationships with its users, advertising, and business partners.

**FIRST CLAIM FOR RELIEF**
**(Defamation, Cal. Civ. Code § 44 (West 2015))**

49.     Plaintiffs incorporate and reallege paragraphs 1 through 48 of this Complaint.

50.     The Clean Master® app has acquired widespread recognition and consumer goodwill in this District and the United States.  As the developer and owner of the Clean Master® app, Cheetah Mobile has incurred substantial resources in promoting and protecting its associated reputation and brand.

51.     APUS has intentionally and knowingly published and disseminated false, defamatory, and unprivileged statements about Cheetah Mobile and its Clean Master® app to any user that installs APUS Launcher on his or her smartphone.  On information and belief, APUS further intends that users of the APUS Launcher will in turn relay this false, defamatory, and unprivileged information about Cheetah Mobile and its Clean Master® app to other potential Cheetah Mobile customers.

52.     On information and belief, APUS' conduct as described herein has been and continues to be intentional, willful, and without regard to Cheetah Mobile's business and reputation.  APUS' conduct has caused, and will continue to cause, Cheetah Mobile to suffer monetary loss to its business, reputation, and goodwill.

53.     In addition, Cheetah Mobile has suffered—and, unless and until APUS' conduct is enjoined, will continue to suffer—irreparable harm as to which it has no adequate remedy at law.

54. Because APUS' actions have been willful, Cheetah Mobile is entitled to an award of costs and, this being an exceptional case, enhanced damages and reasonable attorneys' fees. Cheetah Mobile is also entitled to an injunction preventing further defamation by APUS.

## SECOND CLAIM FOR RELIEF
### (Trade Libel/Product Disparagement, Cal. Civ. Code § 45 (West 2015))

55. Plaintiffs incorporate and reallege paragraphs 1 through 54 of this Complaint.

56. APUS, through its app product APUS Launcher, has intentionally and knowingly published and disseminated false and defamatory statements of fact to users about its competitor Cheetah Mobile's app products, including Clean Master®.

57. The false information disparages the quality and characteristics of the Clean Master® app to users within this District and the United States. As the developer and owner of the app, Cheetah Mobile has incurred substantial resources in promoting and protecting the associated reputation and brand names.

58. APUS knew or should have known that the publication of such false information about Cheetah Mobile and Clean Master® app is likely to cause pecuniary loss to Cheetah Mobile.

59. On information and belief, APUS' conduct as described herein has been and continues to be intentional, willful, and without regard to Cheetah Mobile's business and reputation as well as the product image of the Clean Master® app. APUS' conduct has caused, and will continue to cause, Cheetah Mobile to suffer monetary loss to its business, reputation, and goodwill.

60. In addition, Cheetah Mobile has suffered—and, unless and until APUS' conduct is enjoined, will continue to suffer—irreparable harm as to which it has no adequate remedy at law.

61. Because APUS' actions have been willful, Cheetah Mobile is entitled to an award of costs and, this being an exceptional case, enhanced damages and reasonable attorneys' fees.

## THIRD CLAIM FOR RELIEF
### (Copyright Infringement, 17 U.S.C. § 501 (2014))

62.     Plaintiffs incorporate and reallege paragraphs 1 through 61 of this Complaint.

63.     Cheetah Mobile Inc. is the exclusive owner of the Clean Master® brush logo design for which it has received U.S. Copyright Registration No. VA 1-911-086.

64.     The Clean Master® brush logo design contains significant original and nonfunctional design element that comprises copyrightable subject matter under the Copyright Act, 17 U.S.C. § 101 (2014), *et seq.*

65.     As the owner of the Clean Master® brush logo copyright, Cheetah Mobile Inc. possesses exclusive rights, among others, to copy the logo, prepare derivative works based on the logo, and distribute copies of the logo in the United States.

66.     On information and belief, APUS, as Cheetah Mobile's competitor, had access to all versions of the Clean Master® brush logo design, which were widely distributed via websites such as Google Play.

67.     Without consent, authorization, approval, or license, APUS infringes Cheetah Mobile's Clean Master® brush logo copyright by unlawfully reproducing, preparing derivative works based on, mutilating, and distributing Cheetah Mobile's copyrighted work through its APUS Launcher app in the United States.

68.     APUS' use of the Cheetah Mobile's Clean Master® brush logo is substantially similar to the Cheetah Mobile's Clean Master® brush logo.  By this unlawful use, display, mutilation, and distribution of copyrighted work, APUS has violated Cheetah Mobile Inc.'s exclusive rights under 17 U.S.C. § 106 (2014).

69.     On information and belief, APUS was aware of the Clean Master® brush logo design before it began using that design in its APUS Launcher app, and thereafter had either actual notice and knowledge, or constructive notice, of Cheetah Mobile's Clean Master® brush copyright.

70.     On information and belief, APUS' infringement as described herein has been and continues to be intentional, willful, and without regard to Cheetah Mobile's proprietary rights in

-18-

the Clean Master® brush copyright. APUS' willful copyright infringement has caused, and will continue to cause, Cheetah Mobile to suffer monetary loss to its business, reputation, and goodwill.

71.     In addition, Cheetah Mobile has suffered—and, unless and until APUS' conduct is enjoined, will continue to suffer—irreparable harm as to which it has no adequate remedy at law.

72.     Because APUS' actions have been willful, Cheetah Mobile is entitled to an award of costs and, this being an exceptional case, enhanced damages and reasonable attorneys' fees.

## FOURTH CLAIM FOR RELIEF
### (False Advertising, Lanham Act Section 43(a), 15 U.S.C. § 1125(a)(1)(B) (2014))

73.     Plaintiffs incorporate and reallege paragraphs 1 through 72 of this Complaint.

74.     APUS, through its APUS Launcher app, has intentionally and knowingly published and disseminated false and defamatory statements to users in interstate commerce about its competitor Cheetah Mobile's products, including the Clean Master® app.

75.     The false information actually has deceived or has the tendency to deceive a substantial segment of smartphone users about the quality and characteristics of the Clean Master® app within this District and the United States. The deception is material, is likely to influence, and, on information and belief, has caused users to remove or refrain from installing the Clean Master® app.

76.     APUS knew or should recognize that the publication and dissemination of such false and defamatory information about Cheetah Mobile and the Clean Master® app is likely to cause pecuniary loss and loss of user base to Cheetah Mobile.

77.     APUS knew or should recognize that the publication and dissemination of such false and defamatory information about Cheetah Mobile and the Clean Master® app is likely to injure Cheetah Mobile by lessening the goodwill associated with its products.

78.     On information and belief, APUS' conduct as described herein has been and continues to be intentional, willful, and without regard to Cheetah Mobile's business and reputation as well as the product image of the Clean Master® app. APUS' conduct has caused,

-19-

and will continue to cause, Cheetah Mobile to suffer monetary loss to its business, reputation, users, and goodwill.

79.     APUS' misconduct as described herein constitutes false advertising and unfair competition, and is in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B) (2014).

80.     As a result of APUS' wrongful conduct, Cheetah Mobile has suffered—and unless APUS' conduct is enjoined, will continue to suffer—actual damages and irreparable harm, as to which it has no adequate remedy at law.

81.     Because APUS' actions have been willful, Cheetah Mobile is entitled to treble damages, and, this being an exceptional case, reasonable attorneys' fees.

### FIFTH CLAIM FOR RELIEF
**(Trademark Dilution by Tarnishment,
Lanham Act Section 43(c), 15 U.S.C. § 1125(c) (2014))**

82.     Plaintiffs incorporate and reallege paragraphs 1 through 81 of this Complaint.

83.     As discussed above, Cheetah Mobile America Inc. owns valid and protectable prior rights in the federally registered Clean Master® mark and Clean Master® Brush mark on the principal register.  The marks are also inherently distinctive, and have achieved this distinction, through Cheetah Mobile's longstanding and world-wide use, promotion, and protection.  The marks have come to be associated, individually and as a family of marks, with Cheetah Mobile as the source of the product for which they are used.

84.     The Clean Master® mark and Clean Master® Brush mark are well-recognized by over 443 million users globally.  Cheetah Mobile began using the marks and made the marks famous long before APUS started using these trademarks in its APUS Launcher.

85.     APUS' commercial use in interstate commerce of the Clean Master® mark and Clean Master® Brush mark in the APUS Launcher in connection with its false and defamatory accusations that Cheetah Mobile "steals" user data is likely to cause dilution of the distinctive value and harm to the reputation of Cheetah Mobile's famous marks.

86.     The above-described acts and practices by APUS constitute at least trademark dilution under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c)(2).

87.     As a result of APUS' wrongful conduct, Cheetah Mobile has suffered—and unless APUS' conduct is enjoined, will continue to suffer—actual damages and irreparable harm, as to which it has no adequate remedy at law.

88.     Because APUS' actions have been willful, Cheetah Mobile is entitled to treble damages, and, this being an exceptional case, reasonable attorneys' fees.

## SIXTH CLAIM FOR RELIEF
### (Trademark Dilution, Cal. Bus. & Prof. Code § 14247 (West 2015))

89.     Plaintiffs incorporate and reallege paragraphs 1 through 88 of this Complaint.

90.     Cheetah Mobile's Clean Master® mark and Clean Master® Brush mark are nonfunctional and inherently distinctive and/or have acquired secondary meaning and achieved market penetration throughout California and this District specifically.

91.     Cheetah Mobile has prior common law trademark rights in the Clean Master® mark and Clean Master® Brush mark, individually and as a family of marks, based on its adoption and continuous use of the marks in interstate commerce in connection with the Clean Master® app before all others, including APUS.  Consumers recognize the Clean Master® mark and Clean Master® Brush mark, individually and as a family of marks, as designating Cheetah Mobile as the source of the Clean Master® app.

92.     The Clean Master® mark and Clean Master® Brush mark are well-recognized by over 443 million users globally.  Cheetah Mobile began using the marks and made the marks famous long before APUS started using these trademarks in its APUS Launcher.

93.     APUS' commercial use in interstate commerce of the Clean Master® mark and Clean Master® Brush mark in the APUS Launcher in connection with its false and defamatory accusations that Cheetah Mobile "steals" user data is likely to cause dilution of the distinctive value and harm to the reputation of Cheetah Mobile's famous marks

94.     The above-described acts and practices by APUS constitute at least trademark dilution under Cal. Bus. & Prof. Code § 14247 (West 2015).

95.     As a result of APUS' wrongful conduct, Cheetah Mobile has suffered—and unless and until APUS' conduct is enjoined, will continue to suffer—actual damages and irreparable harm, as to which it has no adequate remedy at law.

96.     Because APUS' actions have been willful, Cheetah Mobile is entitled to treble damages, and, this being an exceptional case, reasonable attorneys' fees.

**SEVENTH CLAIM FOR RELIEF**
**(Unfair Competition and Business Practices,**
**Cal. Bus. & Prof. Code § 17200 (West 2015),** *et seq.***)**

97.     Plaintiffs incorporate and reallege paragraphs 1 through 96 of this Complaint.

98.     As discussed above, Cheetah Mobile has valid and protectable prior rights in the Clean Master® mark and Clean Master® Brush mark, individually and as a family of marks. These marks do not serve any function other than to identify Cheetah Mobile as the source of its mobile app, Clean Master®.  The marks are also inherently distinctive, and, through Cheetah Mobile's long use, have come to be associated, individually and as a family of marks, with Cheetah Mobile as the source of the product on which they are used.

99.     APUS knew or should recognize that the publication and dissemination of false and defamatory information about Cheetah Mobile and Clean Master® app is likely to cause pecuniary loss and loss of user base to Cheetah Mobile.

100.     APUS knew or should recognize that the publication and dissemination of such false and defamatory information about Cheetah Mobile and Clean Master® app is likely to injure Cheetah Mobile by lessening of the goodwill associated with its products.

101.     On information and belief, APUS' conduct as described herein has been and continues to be intentional, willful, and without regard to Cheetah Mobile's business and reputation as well as the product image of the Clean Master® app.  APUS' conduct has caused, and will continue to cause, Cheetah Mobile to suffer monetary loss to its business, reputation, users, and goodwill.

102.     The above-described acts and practices by APUS constitute false advertising under California common law, false advertising, unfair competition, and trademark dilution

under Sections 43(a) of the Lanham Act, 15 U.S.C. §1125(a) (2014), and 43(c) of the Lanham Act, 15 U.S.C. §§ 1125(c) (2014), and are therefore wrongful and unlawful acts in violation of California Business & Professions Code § 17200 (West 2015), *et seq.*

103.    The above-described acts and practices by APUS are unjustified, inflict injury on Cheetah Mobile's business and consumer goodwill, and serve no public benefit, and are therefore also unfair acts in violation of California Business & Professions Code § 17200, *et seq.*

104.    The above-described acts and practices by APUS are likely to mislead or deceive reasonable consumers in the general public and therefore also constitute fraudulent business practices in violation of California Business & Professions Code § 17200, *et seq.*

105.    The unlawful and fraudulent business practices of APUS described above present a continuing threat to, and are meant to deceive members of, the public in that APUS continues to promote its products by wrongfully trading on the goodwill of the registered trademark.

106.    As a direct and proximate result of these acts, Cheetah Mobile has lost revenue on account of consumer confusion, and APUS, on information and belief, has profited and will continue to profit from the strength of the registered trademark.

107.    APUS should be required to restore to Cheetah Mobile any and all profits earned as a result of its unlawful and fraudulent actions, or provide Cheetah Mobile with any other restitutionary relief as the Court deems appropriate.

108.    Additionally, as a direct and proximate result of APUS' wrongful conduct, Cheetah Mobile has been injured in this District and has lost money and profits, and such harm will continue unless APUS' acts are enjoined by the Court.  Cheetah Mobile has no adequate remedy at law for APUS' continuing violation of Cheetah Mobile's rights.

109.    As a result of APUS' wrongful conduct, Cheetah Mobile has suffered—and unless and until APUS' conduct is enjoined, will continue to suffer—actual damages and irreparable harm, as to which it has no adequate remedy at law.

### EIGHT CLAIM FOR RELIEF
### (False and Misleading Advertising, Cal. Bus. & Prof. Code § 17500 (West 2015), *et seq.*)

110.    Plaintiffs incorporate and reallege paragraphs 1 through 109 of this Complaint.

111.    APUS has, by its conduct described above, intentionally and knowingly published and disseminated false information about Cheetah Mobile and its products in violation of California Business and Professions Code § 17500 (West 2015), *et. seq.*

112.    Such information is intended to deceive, and has deceived smartphone users into deleting the Clean Master® app and other Cheetah Mobile apps.

113.    APUS' false and defamatory information caused tremendous negativity and injuries to Cheetah Mobile's business, reputation, goodwill, and intellectual property rights.  As a direct and proximate result of APUS' publication and dissemination of false and defamatory information, Cheetah Mobile has suffered and will continue to suffer irreparable harm.

114.    As a direct and proximate result of APUS' publication and dissemination of false and defamatory information, Cheetah Mobile has suffered loss, damage and injury entitling Cheetah Mobile to restitution of all amount unlawfully gained by APUS, including disgorgement of profits earned by APUS.  Such harm will continue unless and until APUS' acts are enjoined by the Court.  Cheetah Mobile has no adequate remedy at law for APUS' continuing violation of Cheetah Mobile's rights.

### NINTH CLAIM FOR RELIEF
**(Unfair Competition, California Common Law)**

115.    Plaintiffs incorporate and reallege paragraphs 1 through 114 of this Complaint.

116.    Cheetah Mobile's trademarks (including the Clean Master® mark, the Clean Master® Brush mark, and the Cheetah Mobile and "CMCM" marks) are nonfunctional and inherently distinctive and/or have acquired secondary meaning within the relevant market.

117.    Cheetah Mobile has invested substantial time, skill, and money in developing these trademarks.  As a result, Cheetah Mobile's trademarks have achieved market penetration throughout the United States generally, and California and this District specifically.

118.    As discussed above, Cheetah Mobile has prior common law trademark rights in its trademarks, individually and as a family of marks, based on its adoption and continuous commercial use of the marks in California before APUS.  Consumers in California recognize

these trademarks, individually and as a family of marks, as designating Cheetah Mobile as the source of goods.

119. Without Cheetah Mobile's authorization or consent, APUS appropriated and used, and is using, Cheetah Mobile's marks at little or no cost to APUS. APUS' commercial use of these trademarks in APUS Launcher, as set forth above, is likely to, and does in fact, deceive consumers or cause confusion or mistake as to the affiliation, connection, or association of APUS with Cheetah Mobile, or as to the origin, sponsorship, or approval by Cheetah Mobile of APUS' goods, services, or commercial activities.

120. On information and belief, before APUS' first use of the infringing app logo, APUS was aware of these trademarks and thereafter had either actual notice and knowledge, or constructive notice, of these trademarks.

121. On information and belief, APUS' direct infringement of Cheetah Mobile's copyright as described herein has been and continues to be intentional, willful, and without regard to Cheetah Mobile's rights. APUS' acts constitute fraud, oppression, and malice.

122. APUS knew or should recognize that the publication and dissemination of false and defamatory information about Cheetah Mobile and products is likely to cause pecuniary loss and loss of user base to Cheetah Mobile.

123. APUS knew or should recognize that the publication and dissemination of such false and defamatory information about Cheetah Mobile and products is likely to injure Cheetah Mobile by lessening of the goodwill associated with its products.

124. On information and belief, APUS' conduct as described herein has been and continues to be intentional, willful, and without regard to Cheetah Mobile's business and reputation as well as the product image. APUS' conduct has caused, and will continue to cause, Cheetah Mobile to suffer monetary loss to its business, reputation, users, and goodwill.

125. APUS' unauthorized use of trademarks in commerce in California constitutes unfair competition in violation of California common law.

126.   As a result of APUS' wrongful conduct, Cheetah Mobile has suffered—and unless and until APUS' conduct is enjoined, will continue to suffer—actual damages and irreparable harm, as to which it has no adequate remedy at law.

### TENTH CLAIM FOR RELIEF
**(Intentional Interference with Prospective Economic Advantage)**

127.   Plaintiffs incorporate and reallege paragraphs 1 through 126 of this Complaint.

128.   Cheetah Mobile has current and future economic relationships with Google, end users of Cheetah Mobile's mobile apps, and Cheetah Mobile's advertising and business partners. These current and future relationships hold probable future economic benefits and advantages to Cheetah Mobile.

129.   APUS has known of the existence of these economic relationships and that, by publishing and disseminating false and defamatory content about Cheetah Mobile and its products, APUS would interfere with these relationships and cause Cheetah Mobile to lose, in whole or in part, the probable future economic benefits and advantages arising from these relationships.

130.   By the wrongful conduct, including the publication and dissemination of false, disparaging, and defamatory statements regarding Cheetah Mobile and its products, APUS intended to, and has in fact, disrupted and caused permanent damage to Cheetah Mobile's relationships with its current and future users, advertising and business partners.

131.   As a direct and proximate result of APUS' wrongful conduct, Cheetah Mobile has suffered and will continue to suffer economic harm and damages, in an amount to be proven at trial.

132.   As a result of APUS' wrongful conduct, Cheetah Mobile has suffered—and unless and until APUS' conduct is enjoined, will continue to suffer—actual damages and irreparable harm, as to which it has no adequate remedy at law.

### ELEVENTH CLAIM FOR RELIEF
**(Intentional Interference with Contract)**

133.   Plaintiffs incorporate and reallege paragraphs 1 through 132 of this Complaint.

134.    Valid contractual relationships exist between Cheetah Mobile and each end user of Cheetah Mobile's mobile apps, as well as Cheetah Mobile's advertising and business partners.

135.    APUS has known of the existence of these contractual relationships, and APUS' acts of publishing and disseminating false and defamatory content about Cheetah Mobile and its products to end users has been intentional and designed to induce a disruption or termination of these contractual relationships.

136.    On information and belief, by the above-described wrongful conduct, including the publication and dissemination of false, disparaging, and defamatory statements regarding Cheetah Mobile and its products, APUS has intended to, and has in fact, caused users to terminate their contractual relationships with Cheetah Mobile, resulting in erosion to Cheetah Mobile's user base and damages to Cheetah Mobile economic benefits and advantages arising from these contractual relationships.

137.    As a direct and proximate result of APUS' wrongful conduct, Cheetah Mobile has suffered and will continue to suffer economic harm and damages, in an amount to be proven at trial.

138.    As a result of APUS' wrongful conduct, Cheetah Mobile has suffered—and unless and until APUS' conduct is enjoined, will continue to suffer—actual damages and irreparable harm, as to which it has no adequate remedy at law.

### **PRAYER FOR RELIEF**

WHEREFORE, Cheetah Mobile respectfully seeks the following relief:

1.    Entry of judgment for Cheetah Mobile on each of its claims;

2.    An order and judgment enjoining APUS and its officers, directors, agents, servants, employees, affiliates, attorneys, and all others acting in privity or in concert with them, and their parents, subsidiaries, divisions, successors and assigns, from,

        a.    unauthorized use, display, mutilation, and distribution of Cheetah Mobile's copyright;

1    b.  directly or indirectly diluting Cheetah Mobile's federally-registered
2        trademarks;
3    c.  directly or indirectly publishing and disseminating false and defamatory
4        information about Cheetah Mobile's business and its products, false
5        advertising, and/or engaging in unfair business acts, practices and/or conduct
6        against Cheetah Mobile; and
7    d.  wrongfully interfering with any prospective economic relationships Cheetah
8        Mobile has with its users, advertising and business partners.

9    3.    At APUS' own expense, retraction and correction of all false, misleading, and
10 defamatory information of Cheetah Mobile and its products in the same prominent and persistent
11 manner as APUS' original publication and dissemination of such information;

12    4.    An award of actual, compensatory, special, consequential, or statutory damages
13 sustained by Cheetah Mobile as a result of APUS' infringement and misconduct, and/or an
14 accounting of APUS' profits that are attributable to the infringement and misconduct;

15    5.    An award of general damages for injury to reputation and goodwill Cheetah
16 Mobile has sustained a result of APUS' infringement and misconduct;

17    6.    A judgment trebling any damages award, in light of APUS' willful copyright
18 infringement and other misconduct;

19    7.    Punitive or exemplary damages;

20    8.    Restitution of any and all lost profits as a result of APUS' unlawful, unfair, and
21 fraudulent actions;

22    9.    Pre- and post-judgment interest on any past damages;

23    10.   Costs of suit and reasonable attorneys' fees; and

24    11.   Any and all other legal and equitable relief as may be available under law and
25 which the Court may deem proper.

CHEETAH MOBILE'S COMPLAINT FOR DEFAMATION ET AL.

## DEMAND FOR JURY TRIAL

Cheetah Mobile hereby demands a jury trial under Rule 38(b) of the Federal Rules of Civil Procedure and Local Rule 3-6(a) as to all issues in this lawsuit.


Dated: May 27, 2015     WILMER CUTLER PICKERING HALE AND DORR LLP


By: */s/  Keith Slenkovich*
   Keith Slenkovich (CA Bar No. 129793)
   keith.slenkovich@wilmerhale.com
   Song Zhu (CA Bar No. 257608)
   song.zhu@wilmerhale.com
   WILMER CUTLER PICKERING HALE AND DORR LLP
   950 Page Mill Road
   Palo Alto, CA 94304
   Tel. (650) 858-6000
   Fax (650) 858-6100


   Vinita Ferrera (pro hac vice motion to be filed)
   vinita.ferrera@wilmerhale.com
   WILMER CUTLER PICKERING HALE AND DORR LLP
   60 State Street
   Boston, MA 02109
   Tel. (617) 526-6000
   Fax (617) 526-5000

*Attorneys for Plaintiffs Cheetah Mobile Inc., Cheetah Mobile America, Inc., and Cheetah Technology Corporation Limited*

CHEETAH MOBILE'S COMPLAINT FOR DEFAMATION ET AL.