Keith Slenkovich (CA Bar No. 129793)
keith.slenkovich@wilmerhale.com
WILMER CUTLER PICKERING HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA 94304
Tel. (650) 858-6000
Fax (650) 858-6100

Vinita Ferrera (pro hac vice motion to be filed)
vinita.ferrera@wilmerhale.com
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel. (617) 526-6000
Fax (617) 526-5000

*Attorneys for Plaintiffs Cheetah Mobile Inc.,
Cheetah Mobile America, Inc., and
Cheetah Technology Corporation Limited*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHEETAH MOBILE INC., CHEETAH MOBILE AMERICA, INC., CHEETAH TECHNOLOGY CORPORATION LIMITED<br><br>Plaintiffs,<br><br>vs.<br><br>APUS GROUP,<br><br>Defendant. | Case No. 3:15-cv-02363 HSG<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO SERVE DEFENDANT BY ALTERNATIVE MEANS AND EXTEND SERVICE DEADLINE**<br><br>Hearing: March 17, 2016, 2:00 p.m. |

-1-

## NOTICE OF MOTION AND MOTION TO SERVE DEFENDANT BY ALTERNATIVE MEANS AND EXTEND SERVICE DEADLINE

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that at on March 17, 2016 at 2:00 p.m., or at the earliest practicable time thereafter on the Court's schedule, Plaintiffs Cheetah Mobile, Inc., Cheetah Mobile America, Inc., and Cheetah Technology Corporation Limited will and hereby do move for an order authorizing service on Defendant APUS Group by alternative means before an extended service deadline.

Plaintiffs have advised Defendant APUS' counsel of its intent to file this motion, and APUS' counsel has indicated that it will oppose this motion.

## I. INTRODUCTION

Plaintiffs Cheetah Mobile Inc., Cheetah Mobile America, and Cheetah Technology Corporation Limited ("Cheetah Mobile") and Defendant APUS Group are competitors in the fast-growing smartphone application software ("app") industry. Beginning on May 19, Defendant APUS Group ("APUS") began publishing false and *per se* defamatory statements about Cheetah Mobile's business and its Clean Master® app via banner advertisements on APUS' own app, APUS Launcher. These statements falsely accused Cheetah Mobile of "stealing" users' data. In response, on May 27, 2015, Cheetah Mobile filed this action alleging claims under federal and state law including false advertising, defamation, trade libel, copyright infringement, trademark dilution, unfair competition, intentional interference with prospective economic advantage/contract.

Since Cheetah Mobile could not identify any APUS offices in the United States, or any agent authorized to accept service of process on APUS' behalf in the United States, Cheetah Mobile arranged in-person service of the Complaint, Summons, and other required papers on APUS' CEO, who had announced plans to travel to this district to speak at a public event. On May 27, 2015, Cheetah Mobile served the Complaint and Summons on APUS' CEO Mr. Tao Li via a process server in Mountain View, California. However, APUS moved to dismiss the case based on various grounds, including under Federal Rule of Civil Procedure 12(b)(4) for insufficiency of process. Finding that the Summons served on APUS' CEO did not bear the clerk's stamp/signature, the Court quashed the service and set the deadline to effectuate service for February 15, 2016. (Dkt. 57.)

On June 11, 2015, Cheetah Mobile initiated a Request for Service Abroad of the Complaint and the Summons on APUS via the Hague Convention at APUS' official address in Beijing, China as indicated on APUS' homepage. On December 15, 2015, four months after initiating the Hague service, Cheetah Mobile received a certificate from the Chinese Ministry of Justice that the service was not accomplished because "[n]o such company [was] located at the address provided in this request."

-1-

Cheetah Mobile respectfully requests that the Court allow it to serve the Complaint, Summons, and other required papers on APUS via email (at the two email addresses bd@apusapps.com and apusecho@gmail.com listed on APUS' homepage), and on its U.S. counsel. Email service on the company and APUS' U.S. counsel are proper here because no international agreement prohibits such methods, APUS has had actual notice of the lawsuit since the case was filed, and such alternative service is reasonably calculated to give APUS notice of the Complaint, Summons, and any other required papers.

Because the Court previously set the deadline to serve APUS as February 15, 2016, Cheetah Mobile also respectfully requests an extension to the deadline to effectuate this alternative service.

## II.   ISSUE TO BE DECIDED

Whether Cheetah Mobile should be permitted to serve APUS with the Complaint, Summons, and other required papers in this action via email on APUS as well as APUS' U.S. counsel.

## III.   STATEMENT OF FACTS

On May 27, 2015, Cheetah Mobile filed this action alleging claims under federal and state law including false advertising, defamation, trade libel, copyright infringement, trademark dilution, unfair competition, intentional interference with prospective economic advantage, and intentional interference with contract against Defendant APUS Group, a corporation based in Beijing, China.

The same day, Cheetah Mobile attempted service of the Complaint on APUS by delivering a copy of the Complaint and the Summons to the CEO of APUS Group, Mr. Tao Li, in person in Mountain View, California, where he was attending and speaking at a public event. Based on publicized information that Mr. Tao would be attending a public presentation in Mountain View, California on May 27, 2015, Cheetah Mobile arranged for Mr. Li to be personally served after that event, and Mr. Tao was given a full set of papers at that time. Declaration of Keith Slenkovich in Support of Plaintiffs' Motion to Serve Defendants by

Alternative Means and Extend Service Deadline ("Slenkovich Decl."), ¶3.  APUS has been fully aware of this case since that attempted service occurred.

Shortly after being informed by APUS' U.S. counsel, Mr. Ajay Krishnan, that APUS would challenge the sufficiency of Cheetah Mobile's service on Mr. Li, Cheetah Mobile initiated a Request for Service Abroad of the Complaint and the Summons on APUS in China via the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, 20 U.S.T. 361, T.I.A.S. No. 6638 (1969) ("Hague Convention").[1] Slenkovich Decl., ¶4, Ex. A.

Under the relevant Chinese process service procedures, service under the Hague Convention in China is performed via the Chinese Ministry of Justice, who appoints certain regional High Courts as the forwarding authorities to physically serve the papers.  Following these procedures, Cheetah Mobile requested that the Complaint, Summons, and other required papers be served on APUS under Article 5 of the Hague Convention, at APUS' official physical address:  No. 10 Wangjing Street, 42/F Area B, Tower 3, Wangjing SOHO, Chaoyang District, Beijing, China 100015.  Slenkovich Decl., ¶5.  This address represents the only physical address shown on APUS' homepage. *Id*., Ex. B and ¶13, Ex. D.  Cheetah Mobile has further corroborated that APUS identifies its operations to be located at this address.  *See* Declaration of Jianzhong Liu in Support of Plaintiffs' Motion to Serve Defendants by Alternative Means and Extend Service Deadline ("Liu Decl."), ¶¶2-6, Exs. A-E.

On August 1, 2015, APUS moved to dismiss the case based on various grounds, including "sufficiency of process" under Rule 12(b)(4), on the basis that the Summons that Cheetah Mobile delivered to Mr. Li did not bear the Court's seal or the Clerk's signature.  (Dkt. 29 at 22.)  APUS did not indicate that any other information had been withheld from service, or that it had sustained any prejudice from the lack of clerk's seal/signature.  Cheetah Mobile opposed the motion.  (Dkt. 36.)

---

[1] China is a party to the Hague Convention.  *See* Hague Convention Members https://www.hcch.net/en/states/hcch-members/details1/?sid=30 (last visited January 14, 2016).

-3-
Plaintiffs' Motion to Serve Defendant by Alternative Means & Extend Service Deadline
Case No. 3:15-cv-02363HSG

On October 8, 2015, the Court held a hearing during which APUS and Cheetah Mobile (collectively "the Parties") argued and submitted to the Court the sufficiency-of-process issue. The Court directed the Parties to meet and confer in order to submit a stipulation and proposed order regarding how the case should proceed pending Cheetah Mobile's efforts to effectuate service via the Hague Convention. (Dkt. 52). On October 20, 2015, the Parties filed a stipulation (Dkt. 56), which provided, in relevant part, that "[n]othing herein shall limit the Parties' right to file appropriate motions (e.g., motion for alternative service pursuant to Federal Rule of Civil Procedure 4(f)(3)…" *Id*. On the following day, the Court entered an order quashing service on Mr. Li. (Dkt. 57.)

Cheetah Mobile has been diligently trying to perfect service on APUS through the Hague Convention, including re-confirming the address of APUS' office in-person and repeatedly inquiring with the Chinese Ministry of Justice regarding the status of service. Through these efforts, Cheetah Mobile learned that the Beijing People's High Court, who is the local forwarding authority for the Chinese Ministry of Justice for service under the Hague Convention, first delivered the Complaint and Summons to APUS at its official address on July 31, 2015. Liu Decl. ¶7. But APUS' receptionist refused to accept service and claimed that APUS was not located at that address. *Id*. The High Court representative informed the receptionist that APUS has been named as a defendant in a U.S. lawsuit. *Id*. The High Court representative was directed to a different APUS' address, Rooms 203-12, Building 1, Second Floor, 2 Jinyuan Road, Daxing Economic and Technology Development Area, Beijing. *Id*., ¶8. However, when the High Court representative arrived, there was no one was at the address. *Id*. The High Court representative left a notice requiring APUS to go to the Court to pick up the legal papers. *Id*. APUS then called the High Court and claimed that it would pick up the papers from the High Court, but never did. *Id*.

On December 15, 2015, Cheetah Mobile received a formal Certificate of Non-Service from the Chinese Ministry of Justice dated November 16, 2015, confirming that the Chinese Central Authority had attempted but failed to effect service on APUS, for the reasons stated

-4-

Plaintiffs' Motion to Serve Defendant by Alternative Means & Extend Service Deadline
Case No. 3:15-cv-02363HSG

above. Slenkovich Decl., ¶10, Ex. C. On January 7, 2016, Counsel for Cheetah Mobile notified counsel for APUS of the Certificate, and pursuant to APUS' counsel's request, counsel for Cheetah Mobile provided a copy of the Certificate of Non-Service to APUS' counsel. *Id*., ¶11. The service address continues to be the only physical address shown on APUS' homepage. *Id*., ¶13, Ex. D.

**IV.   ARGUMENT**

    **A.   The Court Should Allow Cheetah Mobile to Serve APUS by Email and on Its U.S. Counsel Under Federal Rule of Civil Procedure 4(f)(3) and 4(h)(2)**

An alternative method of service on APUS is appropriate under these circumstances. Federal Rule of Civil Procedure, Rule 4(h)(2) provides that a foreign corporation may be served "at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under Rule (f)(2)(C)(i)." Fed. R. Civ. Proc. 4(h)(2). Rule 4(f)(3) allows for service "by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. Proc. 4(f)(3). Service by alternative means pursuant to Rule 4(f)(3) is "as favored as service available under Rule 4(f)(1) and Rule 4(f)(2)." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002). It is "neither a 'last resort' nor 'extraordinary relief'" but "merely one means among several which enables service of process on an international defendant." *Id.*

Based on the plain language of the rule, two requirements exist for Rule 4(f)(3) to apply in a particular case: "service under Rule 4(f)(3) must be (1) directed by the court; and (2) not prohibited by international agreement." *Id.* at 1014. Further, the method of service the Court authorizes must comport with basic due process. *Id.* at 1016. This requirement is met if the method of service is reasonably calculated to give the defendant notice of the action and an opportunity to present its objections. *Id.* It is within "the sound discretion of the district court" to determine when alternative service of process under Rule(f)(3) is warranted. *Id.* at 1016.

The Court should order service by email on APUS or service on APUS' U.S. counsel in this case because no international agreement prohibits such methods of service, because both

-5-

methods are reasonably calculated to give APUS notice and an opportunity to respond to Cheetah Mobile's lawsuit, and because APUS has had actual notice of the pendency of this action since day one.

### B. Email Service or Service on APUS' U.S. Counsel Is Not Prohibited by Any Applicable International Agreement

The Hague Convention does not prohibit email service, and courts in this District have authorized email service on foreign defendants in countries subject to the Hague Convention, including those in China. *Facebook v. Banana Ads, LLC*, No. C-11-3619 YGR, 2012 U.S. Dist. LEXIS 42160, *6 (N.D. Cal. Mar. 27, 2012) (allowing email service of various foreign defendants, including those subject to the Hague Convention); *Gucci Am., Inc. v. Huoqing*, No. C-09-05969 JCS, 2011 U.S. Dist. LEXIS 783, *9 (N.D. Cal. Jan. 3, 2011) (noting the court had previously authorized email service on defendant in China). While China has objected to Article 10 of the Hague Convention, making service by *postal* mail impermissible, this objection does not apply to email. *Williams-Sonoma v. Friendfinder, Inc.*, No. C 06-06572 JSW, 2007 U.S. Dist. LEXIS 31299, *6 (N.D. Cal. Apr. 27, 2007) (finding Hague Convention permitted email service for any signatory countries and that only postal mail service was prohibited in those countries that had objected to Article 10). Thus, there is no international agreement or objection that prohibits email service of APUS in China.

The Hague Convention likewise does not prohibit service on counsel. Thus, the Court may order the Complaint, Summons, and other required papers to be served on APUS' U.S. counsel as a supplemental means of service to avoid further delays that attempting to re-serve via the Hague Convention would cause. *See Crane v. Battelle*, 127 F.R.D. 174, 177 (S.D. Cal. 1989).

### C. The Alternative Methods of Service Are Reasonably Calculated to Give APUS Notice

An alternate method of service satisfies the constitutional requirement of due process if it is "reasonably calculated to provide actual notice" and an opportunity to respond. *Rio*, 284 F.3d

at 1017; *Facebook*, 2012 U.S. Dist. LEXIS 42160, at *5. Courts in this District have found that email is reasonably calculated to give notice when one or more of the following factors is present: (1) the defendant engages in commercial internet activities; (2) the defendant relies on email to conduct its business; (3) email has been an effective way of communicating with the defendant; (4) the defendants have valid email accounts; (5) email is the defendant's preferred method of contact; and/or (6) previous attempts to serve the defendant have failed or physical service would not be possible. *See, e.g.*, *D. Light Design v. Boxin Solar Co.*, No. C-13-5988 EMC, 2015 U.S. Dist. LEXIS 14683, *5 (N.D. Cal. Feb. 6, 2015) (authorizing email service where defendant "held out the email address at issue as its preferred contact information"); *Facebook*, 2012 U.S. Dist. LEXIS 42160, at *6 (authorizing email service on defendants engaged in commercial internet activities and who "rel[ied] on electronic communications to operate their business"); *Bank Julius Baer & Co. v. WikiLeaks*, No. C 08-00824 JSW, 2008 U.S. Dist. LEXIS 14758, *5 (N.D. Cal. Feb. 13, 2008) ("Plaintiffs have also demonstrated that there are email accounts listed for defendants, which would serve the purposes of ensuring defendants receive adequate notice."); *Williams-Sonoma*, 2007 U.S. Dist. LEXIS 31299, at *5 (plaintiffs submitted evidence that defendants could not be located or that they had refused to accept service). All of these factors are present here.

*First*, APUS' entire business is based on the development and distribution of mobile smartphone apps in association with commercial internet activities.

*Second*, APUS relies on email to conduct its business. On its website, APUS lists at least four methods of contact based on the Internet. Slenkovich Decl., ¶13, Ex. D (contact APUS via Facebook, Twitter, and two email addresses bd@apusapps.com and apusecho@gmail.com). Thus, APUS directs individuals and companies to communicate with it about its business via electronic messages. *Id*.

*Third and Fourth*, APUS has email accounts through which it may be contacted. Its website lists two email addresses: one for customer service, and one for "business cooperation."

*Id.* Thus, it is apparent that APUS has valid email accounts, and communicates with customers and business partners via these email accounts.

*Fifth*, the only contact information APUS provides on its website for customers or business partners, other than a physical address in China (which address was disavowed by its receptionist, *see supra* at 4), is via email and the Internet. *See id.* No phone number is listed. Therefore, it is clear that electronic messages are APUS' preferred method of contact.

*Sixth*, physical service of APUS' CEO in person is no longer possible. The fortuitous circumstances that provided Cheetah Mobile a one-time opportunity to personally serve APUS no longer exist. The event that APUS' CEO was attending has concluded, and Cheetah Mobile has no further information concerning Mr. Li's future plans to visit the United States (as Mr. Li has since stopped announcing his attendance at U.S. events via the company's and his personal social media channels, which he had previously done on a routine basis before May 2015). Additionally, traveling to China to attempt to serve APUS or its CEO personally there would be futile, as Rule 4 expressly prohibits personal delivery in a foreign country when serving a corporation. Fed. R. Civ. Proc. 4(h)(2) (proving a foreign corporation may be served "in any manner prescribed by Rule 4(f) for serving an individual, *except* personal delivery under (f)(2)(C)(i)"). Also, Cheetah Mobile knows of no individual or agent in the United States who could accept service on behalf of APUS, other than APUS' U.S. counsel.

## V. CONCLUSION

Because APUS has actual notice of this action, because serving via email on APUS and APUS' U.S. counsel is more than adequate to give APUS notice of Cheetah Mobile's lawsuit, the Court should permit Cheetah Mobile to serve APUS via the email addresses set forth in the attached Proposed Order and serve APUS' U.S. counsel, as alternative methods of service to be accomplished by a new deadline to be set by the Court (Cheetah Mobile suggests within five business days from the date of the Court's order).

Dated: February 5, 2016        WILMER CUTLER PICKERING HALE AND DORR LLP

By: */s/ Keith Slenkovich*
Keith Slenkovich (CA Bar No. 129793)
keith.slenkovich@wilmerhale.com
WILMER CUTLER PICKERING HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA 94304
Tel. (650) 858-6000
Fax (650) 858-6100

Vinita Ferrera (pro hac vice motion to be filed)
vinita.ferrera@wilmerhale.com
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel. (617) 526-6000
Fax (617) 526-5000

*Attorneys for Plaintiffs Cheetah Mobile Inc., Cheetah Mobile America, Inc., and Cheetah Technology Corporation Limited*